UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

AMERICAN AXLE & MANUFACTURING,
INC.,

          Plaintiff

v.

DONALD MEASEL, JAMES MCDADE,
DOUG ANDERSON, WALTER ZIELINSKI,
and KEVIN GOLISZEK, individually and on behalf
of a class of similarly situated individuals, and
their surviving spouses, dependents and beneficiaries,

          Defendants.
_____/

Case No.

Honorable

## COMPLAINT

American Axle & Manufacturing, Inc. ("AAM"), by and through its attorneys, VERCRUYSSE MURRAY & CALZONE, P.C., pursuant to 29 U.S.C. § 1132(a)(3), and 28 U.S.C. § 2201 submits the following Complaint for Declaratory Judgment:

## PARTIES

1.  Plaintiff AAM is a fiduciary under 29 U.S.C. § 1001, *et seq*. and an employer that has manufactured automotive parts at plants in Detroit, Michigan and Cheektowaga, New York.

2.  Defendant DONALD MEASEL is a participant in the American Axle & Manufacturing, Inc. Hourly-Rate Associates Pension Plan ("Pension Plan"), was employed at AAM's Detroit facility, was terminated when that facility closed on February 25, 2012 and held the position of Chairman for Local 22 of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW").

1

3. Defendant JAMES MCDADE is a participant in the Pension Plan, was employed at AAM's Detroit facility, was terminated when it that facility closed on February 25, 2012 and held the position of Alternate Committeeman for Local 22 of the UAW.

4. Defendant DOUG ANDERSON is a participant in the Pension Plan, was employed at AAM's Detroit facility, was terminated when it that facility closed on February 25, 2012 and held the position of Shop Committeeman for Local 22 of the UAW.

5. Defendant WALTER ZIELINSKI is a participant in the Pension Plan, was employed at AAM's Cheektowaga facility, was terminated when it that facility closed on February 25, 2012 and held the position of Alternate Shop Committeeman for Local 846 of the UAW.

6. Defendant KEVIN GOLISZEK is a participant in the Pension Plan, was employed at AAM's Cheektowaga facility, was terminated when it that facility closed on February 25, 2012 and held the position of UAW Skilled Trade Representative for Apprenticeship for Local 846 of the UAW.

7. Defendants are associates who would meet the age and service requirements for electing a Mutually Satisfactory Retirement ("MSR") if the benefit were otherwise available ("MSR Associates").

8. The class is defined as: "All participants in the American Axle & Manufacturing Pension Plan previously employed at the Detroit Manufacturing Complex or Cheektowaga Manufacturing Facility who would meet the age and service criteria for electing MSR retirement under the terms of the Pension Plan due to the closing of the Detroit Manufacturing Complex or Cheektowaga Manufacturing Facility on February 25, 2012 and their surviving spouses, dependents and beneficiaries, if the Pension Plan was not prohibited by the Pension Protection

Act, Internal Revenue Code, Employee Retirement Income Security Act and the American Axle & Manufacturing Pension Plan from paying the MSR benefits."

## FACTS

9. In May 2008, the UAW negotiated a National Master Agreement (the "CBA"), with regard to wages, benefits and working conditions with AAM for certain manufacturing facilities, including AAM's Detroit and Cheektowaga plants. The May 2008 CBA expired on February 25, 2012. (Pertinent Provisions attached as Exhibit 1)

10. Exhibit A of the CBA calls for the establishment of a pension plan (Exhibit 2), and Exhibit A-1 of the CBA contained a statement of the Pension Plan (Pertinent Provisions attached as Exhibit 3). The Plan Document for the Pension Plan was originally effective in 1994, has been restated at various times since 1994 as required by ERISA and the Internal Revenue Code, and covers certain associates at AAM's manufacturing facilities, including AAM's Detroit and Cheektowaga plants. (Pertinent Provisions and Amendments attached as Exhibit 4)

11. Section 2 of Exhibit A to the CBA was agreed to by AAM and the UAW, and states in part:

> (b) The Corporation agrees to pay over irrevocably to the trustee or insurance company during the period of this agreement, contributions or payments for the Plan equal to the amount required under Section 412 of the Internal Revenue Code determined and certified as of each anniversary of the effective date of the Plan by one or more actuaries chosen by, but independent of, the Corporation, and qualified through Fellowship in the Society of Actuaries and enrollment with the Joint Board for Enrollment of Actuaries (hereinafter referred to as the Actuary). Such contributions or payments for any year may be made not later than the date on which such contributions are required by law to be made for the purpose of crediting such contributions to such year under the minimum funding standards of the Employee Retirement Income Security Act of 1974:
>
> (c) The Corporation may contribute or pay additional amounts to the trustee or insurance company or both.
>
> (d) The Corporation by payment of the contributions or amounts as hereinbefore provided in this section shall be relieved of any further liability, except as

provided under the Internal Revenue Code, and pensions and supplements shall be payable only from the trust fund or the insured fund or both.

12. AAM has met all funding obligations required by the Pension Plan, the Employee Retirement Income Security Act, as amended ("ERISA"), Internal Revenue Code Section 430 and final U.S. Treasury regulations under Section 2 of Exhibit A of the CBA.

13. Section 4.2(d) of the Plan Document for the Pension Plan provides for a MSR benefit:

> **Mutually Satisfactory Retirement.** An Associate who has attained age 55 (age 50 for an Associate who is laid off as a result of a plant closing where no other Corporation plants are in the same geographical area) but not age 65 and who has 10 or more years of Eligibility Credited Service may be retired under mutually satisfactory conditions as set forth hereinafter in the standards applicable to such retirement as negotiated between the Corporation and the applicable Union.

Article II, Section 2(b) of Exhibit A-1 likewise provides for a MSR benefit.

14. The negotiated MSR pension benefit is payable upon a plant closing only upon the written approval of AAM's Personnel Director or the designated representative of the Personnel Director.

15. MSR pension benefits payable upon a plant closing are "unpredictable contingent event" benefits under the Pension Protection Act ("PPA"), which is part of the Internal Revenue Code, and ERISA, 26 U.S.C. § 436(b); 29 U.S.C. § 1056(g)(1).

16. Pursuant to the PPA, the Internal Revenue Code and ERISA, unpredictable contingent event benefits are prohibited if the Pension Plan is less than 60% funded during the plan year when the event occurs. 26 U.S.C. § 436(b); 29 U.S.C. § 1056(g)(1).

17. The Pension Plan conforms with the requirements of the PPA, the Internal Revenue Code and ERISA regarding the payment of unpredictable contingent event benefits.

18. Section 7.4(b)(1) of the Plan Document for the Pension Plan prohibits the payment of plant shutdown pension benefits when the adjusted funding target attainment percentage ("AFTAP") for the plan year is less than 60%:

> **In General.** To the extent the Plan provides for shutdown benefits and/or other unpredictable contingent event benefits, unpredictable contingent event benefits with respect to any unpredictable contingent events occurring during a Plan Year will not be paid if the adjusted funding target attainment percentage for the Plan Year is:
>
> **(A)** Less than 60 percent; or
>
> **(B)** 60 percent or more, but would be less than 60 percent if the adjusted funding target attainment percentage were redetermined applying an actuarial assumption that the likelihood of occurrence of the unpredictable contingent event during the Plan Year is 100 percent.

19. AAM has met all of its funding obligations to the Pension Plan under the terms of the Pension Plan, the CBA, the Internal Revenue Code, and ERISA.

20. The Pension Plan's actuary, Towers Watson, determined that the Pension Plan's AFTAP for the current Plan Year is less than 60%. (Exhibit 5) AAM shared the actuary's report and determination with the UAW.

21. A dispute has arisen between the UAW, who was acting on behalf of the class, and AAM over the interpretation of the Pension Plan terms, specifically whether AAM is required to fund the Pension Plan so as to permit the payment of MSR pension benefits and the right to attendant healthcare benefits for MSR eligible associates upon a plant closing.

22. AAM, after negotiating in good faith over successor agreements unsuccessfully and then negotiating over the decision to close the Detroit and Cheektowaga plants, announced that effective on the expiration of the CBA on February 25, 2012, the Detroit and Cheektowaga plants would close.

23. From January 2012 through the present, AAM and the UAW have attempted to negotiate a closure agreement for AAM's Detroit and Cheektowaga plants.

24. A dispute over MSR pension benefits and attendant healthcare benefits for approximately 99 associates has prevented the UAW and AAM from reaching an agreement over severance benefits for all 337 UAW-represented associates of the Detroit and Cheektowaga plants affected by the plant closings.

25. The UAW is unwilling to agree that the payment of MSR pension benefits and attendant healthcare benefits is prohibited by 26 U.S.C. § 436(b), 29 U.S.C. § 1056(g)(1), AAM's Health Care Program for Hourly Associates ("Health Care Program" – pertinent provisions attached as Exhibit 6) and the Pension Plan.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(a)(3) to provide "appropriate equitable relief . . . to enforce the provisions of this subchapter [of ERISA] or the terms of the Plan."

27. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 to issue a Declaratory Judgment.

28. Jurisdiction and venue are proper in the United States District Court for the Eastern District of Michigan because the Pension Plan is administered in the District. 28 U.S.C. §1391; 29 U.S.C. § 1132(e)(2).

## COUNT I – ERISA 502(a)(3)

29. AAM incorporates by reference all of the preceding paragraphs as if restated herein.

30. The Pension Plan is a "pension plan" as defined by ERISA.

31. AAM is a fiduciary of the Pension Plan.

32. ERISA requires AAM to administer the Pension Plan in accordance with its terms and consistent with ERISA and the Internal Revenue Code and Pension Protection Act.

33. Section 436(b)(1) of the PPA and Internal Revenue Code, 26 U.S.C. § 436(b)(1), and Section 206(g)(1) of ERISA, 29 U.S.C. § 1056(g)(1), prohibit the Pension Plan from paying an unpredictable contingent event benefit, such as the plant shutdown benefit provided by the MSR provision of the Pension Plan, if the Pension Plan's AFTAP for the plan year is less than 60% or would be less than 60% taking into account the unpredictable contingent event benefit.

34. In compliance with Section 436(b)(1) of the PPA and Internal Revenue Code, 26 U.S.C. § 436(b)(1), and Section 206(g)(1) of ERISA, 29 U.S.C. § 1056(g)(1), Section 7.2(a) of the Plan Document for the Pension Plan requires that the Pension Plan comply with the funding-based rules of the Internal Revenue Code. In addition, Section 7.4(b)(1) of the Plan Document for the Pension Plan prohibits the payment of plant shutdown benefits when the AFTAP for the plan year is less than 60%.

35. The Pension Plan's AFTAP for the current plan year is less than 60%. (Exhibit 5)

36. AAM has met all of its funding obligations to the Pension Plan under the terms of the Plan Document for the Pension Plan, the collective bargaining agreement, the Internal Revenue Code, and ERISA.

37. Section 2 of Exhibit A of the CBA provides that if AAM makes contributions or payments in accordance with accepted actuarial principles, it is relieved of further liability for contributions to the Pension Plan.

38. MSR Associates are not eligible to receive MSR benefits in 2012 or any subsequent year.

39. MSR Associates are not eligible for health insurance benefits associated with a MSR retirement because under AAM's Health Care Program, these benefits are conditioned upon receipt of Normal or Early Retirement pension benefits as defined by the Pension Plan.

40. AAM, as a fiduciary of the Pension Plan, cannot permit MSR Associates to retire under the MSR provision of the Pension Plan.  As a matter of law, the Pension Plan must be treated as though it does not provide for MSR benefits.  MSR Associates may elect or in the future elect another form of retirement under the Pension Plan to which they may be or become eligible.

41. On behalf of the named Defendants and other MSR Associates, the UAW is attempting to force AAM to fund the Pension Plan beyond its obligations under the CBA so as to pay a MSR pension benefit in a manner which is not required by the CBA, federal law and the Pension Plan.

42. On behalf of the named Defendants and other MSR Associates, the UAW is attempting to force AAM and the Pension Plan to violate the PPA, Internal Revenue Code, ERISA, the Pension Plan and, in the case of AAM, the Health Care Program by demanding that the Pension Plan be required to pay and that AAM, as administrator of the Pension Plan, be required to authorize the payment of MSR pension benefits and provide attendant health insurance benefits to MSR Associates as a condition of reaching a collectively bargained closure agreement relative to the closing of the Detroit and Cheektowaga plants.

WHEREFORE, Plaintiff AAM asks the Court to Declare and Order that MSR pension benefits and attendant health care benefits for retirees cannot be paid now, or in any subsequent year, to MSR Associates terminated due to plant closings in 2012 consistent with 26 U.S.C. §

436(b), 29 U.S.C. § 1056(g)(1), the Pension Plan and the Health Care Program and award AAM its attorneys fees incurred in connection with this action.

## II.    CLASS ALLEGATIONS

43.   The class is defined as: "All participants in the American Axle & Manufacturing Pension Plan previously employed at the Detroit Manufacturing Complex or Cheektowaga Manufacturing Facility who would meet the age and service criteria for electing MSR retirement under the terms of the Pension Plan due to the closing of the Detroit Manufacturing Complex or Cheektowaga Manufacturing Facility on February 25, 2012 and their surviving spouses, dependents and beneficiaries, if the Pension Plan was not prohibited by the Pension Protection Act, Internal Revenue Code, Employee Retirement Income Security Act and the American Axle & Manufacturing Pension Plan from paying the MSR benefits."

44.   Class Representatives DONALD MEASEL, JAMES MCDADE, DOUG ANDERSON, WALTER ZIELINSKI, and KEVIN GOLISZEK have the same interests in this case that other members of the class and will adequately represent the interests of the class.

45.   The requirements of Fed. R. Civ. P. 23(a) are satisfied because: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

46.   This class action may be maintained as a Rule 23(b)(1)(a) class action because the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varied adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

WHEREFORE, Plaintiff AAM requests the following relief:

A. That the class definitions suggested in this complaint should be adopted by the Court;

B. That the Court order such evidentiary hearings as may be necessary in order to determine whether this class should be certified; and

C. That the Court certify a class of: "all participants in the American Axle & Manufacturing Pension Plan previously employed at the Detroit Manufacturing Complex or Cheektowaga Manufacturing Facility who would meet the age and service criteria for electing MSR retirement under the terms of the Pension Plan due to the closing of the Detroit Manufacturing Complex or Cheektowaga Manufacturing Facility on February 25, 2012 and their surviving spouses, dependents and beneficiaries, if the Pension Plan was not prohibited by the Pension Protection Act, Internal Revenue Code, Employee Retirement Income Security Act and the American Axle & Manufacturing Pension Plan from paying the MSR benefits.

D. That the defendants, DONALD MEASEL, JAMES MCDADE, DOUG ANDERSON, WALTER ZIELINSKI, and KEVIN GOLISZEK be named the defendant class representatives.

## COUNT III – DECLARATORY JUDGMENT

47. Plaintiff incorporates by reference all of the preceding paragraphs as if restated herein.

48. AAM has adverse legal interests with DONALD MEASEL, JAMES MCDADE, DOUG ANDERSON, WALTER ZIELINSKI, and KEVIN GOLISZEK.

49. DONALD MEASEL, JAMES MCDADE, DOUG ANDERSON, WALTER ZIELINSKI, and KEVIN GOLISZEK have interests in this case that are the same as the class members that they represent.

50. There is an actual existing, substantial bona fide controversy between AAM and DONALD MEASEL, JAMES MCDADE, DOUG ANDERSON, WALTER ZIELINSKI, KEVIN GOLISZEK and all other members of the class over the rights to MSR pension benefits

and attendant health care benefits under the Pension Plan, the Health Care Program, ERISA, the Internal Revenue Code and the PPA.

WHEREFORE, Plaintiff AAM asks the Court to issue a Declaratory Judgment that MSR pension benefits and attendant health care benefits cannot be paid now, or in any subsequent year, to MSR Associates terminated due to plant closings in 2012 because MSR pension benefits are unpredictable contingent event benefits that are prohibited from being paid pursuant to the Pension Plan, the Health Care Program, 26 U.S.C. § 436(b) and 29 U.S.C. § 1056(g)(1) and award AAM its attorneys fees incurred in connection with this action.

Respectfully submitted,

**VERCRUYSSE MURRAY & CALZONE, P.C.**

By:     s/Robert M. Vercruysse_____
    **Robert M. Vercruysse (P21810)**
    **David B. Calzone (P33486)**
    **William E. Altman (P52788)**
31780 Telegraph Rd., Ste. 200
Bingham Farms, MI 48025
(248) 540-8019
rvercruysse@vmclaw.com
**Attorneys for Plaintiff**

Dated:  April 20, 2012